HON. MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| PUGET SOUNDKEEPER ALLIANCE, | ) | No. 2:15-cv-01460-MJP |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | CONSENT DECREE |
| BUSE TIMBER & SALES, INC., | ) | |
| Defendant. | ) | |
| _____ | ) | |

## I.     STIPULATIONS

Plaintiff Puget Soundkeeper Alliance sent a sixty-day notice of intent to sue letter to Defendant Buse Timber & Sales, Inc. on or about June 25, 2015, and filed a complaint on September 11, 2015, alleging violations of the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, relating to discharges of stormwater from Buse's facility in Everett, Washington, and seeking declaratory and injunctive relief, civil penalties and attorneys' fees and costs.

Puget Soundkeeper Alliance recognizes that Buse is an employee-owned company and an important member of the local community, and unable to afford a substantial penalty payment.

Puget Soundkeeper Alliance and Buse agree that settlement of this matter is in the best interest of the parties and the public, and that entry of this Consent Decree is the most appropriate means of resolving this action.

Puget Soundkeeper Alliance and Buse stipulate to the entry of this Consent Decree without

CONSENT DECREE - 1
CASE No. 2:15-cv-01460-MJP

trial, adjudication, or admission of any issues of fact or law regarding Puget Soundkeeper Alliance's claims or allegations set forth in its complaint and its sixty-day notice.

DATED this 10th day of May, 2016.

MONTGOMERY PURDUE
BLANKINSHIP & AUSTIN PLLC

SMITH & LOWNEY PLLC

By _____
    Michael E. Gossler, WSBA #11044
Attorneys for Defendant Buse Timber &
Sales, Inc.

By _____
    Richard A. Smith, WSBA #21788
    Meredith A. Crafton, WSBA #46558
Attorneys for Plaintiff Puget Soundkeeper
Alliance

BUSE TIMBER & SALES, INC.

PUGET SOUNDKEEPER ALLIANCE

By _____
    Tom Parks
    Buse Timber & Sales, Inc., President

By _____
    Chris Wilke
    Puget Soundkeeper Alliance, Executive
    Director

## II.    ORDER AND DECREE

THIS MATTER came before the Court upon the foregoing Stipulations of the parties. Having considered the Stipulations and the promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

1.    This Court has jurisdiction over the parties and subject matter of this action.

2.    Each signatory for the parties certifies for that party that he or she is authorized to enter into the agreements set forth below.

3.    This Consent Decree applies to and binds the parties and their successors and assigns.

4.    This Consent Decree and any injunctive relief ordered within will apply to the operation, oversight, or both by Buse at its facility located at or about 3812 28th Pl. NE, Everett, WA 98201-8602 ("Facility"), which is subject to National Pollutant Discharge Elimination System Permit No. WAR000097 ("NPDES permit").

CONSENT DECREE - 2
CASE No. 2:15-cv-01460-MJP

5.      This Consent Decree is a full and complete settlement and release of all the claims in the complaint, the sixty-day notice and all other claims known and unknown, contingent or otherwise, for any acts or omissions, existing as of the date of entry of this Consent Decree, that could be asserted under the Clean Water Act, 33 U.S.C. §§ 1251-1387, arising from operations of the Facility against Buse, its subsidiaries, employees, agents, successors and assigns. These claims are released and dismissed with prejudice.

6.      This Consent Decree is a settlement of disputed facts and law.

7.      Buse agrees to the following terms and conditions in full and complete satisfaction of all the claims covered by this Consent Decree:

a.      Buse will comply fully with all conditions of its NPDES Permit and any successor, modified, or replacement permit authorizing discharges of stormwater associated with industrial activity from the Facility. Maintaining full compliance with the ISGP includes but is not limited to fully implementing Ecology's "Draft 2013 Implementation Manual for Log Yards" and incorporating the manual as well as its best management practices (BMPs) into the Facility's SWPPP.

b.      Within thirty days of the entry of this Consent Decree, Buse will update its SWPPP to include:

i.      A description of wash pad and containment vault as well as a prohibition on vehicle washing anywhere except new wash pad;

ii.     A site map that represents true site conditions which omits SW grassy area that is not used for industrial activity and which does not drain or connect to any industrial area.

iii.    Proper descriptions of site surfaces as paved, unpaved or vegetated.

CONSENT DECREE - 3
CASE No. 2:15-cv-01460-MJP

iv.     All other required BMPs in this Consent Decree or applicable from the

ISGP.

c.      Within thirty days of the entry of this Consent Decree, Buse will remove the

accumulation of wood debris resulting from the delivery and offloading of logs on,

around, and immediately west of its log float beach on Union Slough, and to dispose

of this waste properly with other mill wood waste.

d.      Buse will conduct log float beach and ramp, activity in accordance with Buse's

Aquatic Lease with Washington State Department of Natural Resources and

maintain the ramp and adjacent beach areas as specified in the Aquatic Lease

(Attachment A to this Consent Decree) under sections 2.2 Restrictions on Use, 8.2

Use of Hazardous Substances, and 8.6 Cleanup.

e.      Within thirty days of the entry of this Consent Decree, Buse will amend its

SWPPP to include (1) a description of log float beach and ramp areas and activities,

and (2) a listing of potential pollutant sources attributable to activity.

f.      Buse will maintain the non-paved temporary log storage area west of the

ramp, where stormwater runoff drains into the Buse facility, applicable BMPs

specified in the Ecology's "Draft 2013 Implementation Manual for Log Yards."

g.      Buse will resume quarterly sampling at DP-1 for all parameters immediately.

The sample taken on Jan 19, 2016 may be the first sample.

h.      Within thirty days of the entry of this Consent Decree, Buse will revise

description of DP-1 sampling point in its SWPPP to note that the sampling point is

only appropriate when the sampler employs a substantial reach with a sampling pole

approximately 8 feet up the north ditch from the tide gate to avoid comingling of

CONSENT DECREE - 4
CASE No. 2:15-cv-01460-MJP

sample with discharge from the swirling confluence with the south ditch and effluent from the west ditch.

i.      Buse will properly maintain, replace and dispose of soiled surface booms and include in its SWPPP a schedule for replacing the boom as necessary, but no less frequently than every year, and properly disposing of soiled booms.

j.      Within thirty days of the entry of this Consent Decree, Buse will update the Facility's SWPPP to include a description of the berm on the southern border of the facility and engineer approval of the berm.  Buse will include in its SWPPP and at a minimum employ the following berm-specific BMPs to ensure that no runoff from Buse's yard enters the south ditch:

      i.      Closely inspect the south log yard and berm monthly for signs of deterioration and/or seepage to ensure berm is maintained and vegetated/stabilized;

      ii.      Keep equipment and facility operations a safe distance away from the berm to prevent impacting or damaging the berm;

      iii.      Repair berm immediately if damaged or inspections reveal signs of deterioration;

      iv.      Maintain full vegetative coverage or other form of stabilization of berm and buffer area. Replant vegetation as needed in the event of damage or die-off;

      v.      Maintain berm at a sufficient height to prevent overflow and seepage.

k.      Within thirty days of the entry of this Consent Decree, Buse will replace the silt curtains and update its SWPPP to include regular silt curtain inspection and the following BMPs:

    i.      Clean or replace silt curtains immediately if inspection and/or benchmark exceedance reveals the need to do so;

    ii.     Include detailed silt curtain cleaning and replacement procedures in SWPPP to adequately protect against illicit discharge of solids in north ditch during silt curtain cleaning and replacement and require proper disposal of used silt curtains.

l.      Within thirty days of the entry of this Consent Decree, Buse will provide a copy of the updated SWPPP to Soundkeeper for comments. Within thirty (30) days receipt of Soundkeeper's comments, Buse will make a good faith effort to respond and further revise the SWPPP as Buse's stormwater consultant deems appropriate.

m.     Buse will, for a period of three (3) years beginning on the date that this Consent Decree is entered by the Court, forward copies to Soundkeeper of all written or electronic communications between it and Ecology related to the NPDES permit, the Clean Water Act, and stormwater discharges from the Facility.  During this same period, Buse shall forward copies to Soundkeeper of all inspection reports and/or checklists of all visual monitoring conducted at the Facility pursuant to the terms and conditions of the NPDES permit.  All copies shall be forwarded electronically to Soundkeeper on a quarterly basis and not later than the forty-fifth (45th) day following the end of each calendar quarter.

8.     Not later than seven (7) days after the entry of this Consent Decree by this Court, Buse will pay four thousand dollars ($4,000) to the Rose Foundation for Communities and the Environment for a project or projects to improve or protect the water quality of Puget Sound as described in **Attachment B** this Consent Decree.  Checks will be made to the order of and delivered to: The Rose Foundation for Communities and the Environment.  Payment will include the following reference in a cover letter or on the check: "Consent Decree, Puget Soundkeeper Alliance v. Buse Timber & Sales, Inc."  A copy of the check and cover letter, if any, will be sent simultaneously to Puget Soundkeeper Alliance and its counsel.

9.     Within seven (7) days of entry of this Consent Decree by the Court, Buse shall pay Puget Soundkeeper Alliance's actual litigation fees, expenses, and costs (including reasonable attorney and expert witness fees) incurred in this matter in the amount of forty thousand dollars ($40,000) by check payable and mailed to Smith & Lowney, PLLC, 2317 East John St., Seattle, WA 98112, attn: Richard A. Smith.  Buse's payment shall be in full and complete satisfaction of any claims Puget Soundkeeper Alliance has or may have, either legal or equitable, and of any kind or nature whatsoever, for fees, expenses, and costs incurred in the litigation.

10.     A force majeure event is any event outside the reasonable control of Buse that causes a delay in performing tasks required by this decree that cannot be cured by due diligence. Delay in performance of a task required by this decree caused by a force majeure event is not a failure to comply with the terms of this decree, provided that Buse notifies Puget Soundkeeper Alliance of the event; the steps that Buse will take to perform the task; the projected time that will be needed to complete the task; and the measures that have been taken or will be taken to

CONSENT DECREE - 7
CASE No. 2:15-cv-01460-MJP

prevent or minimize any impacts to stormwater quality resulting from delay in completing the task.

Buse will notify Puget Soundkeeper Alliance of the occurrence of a force majeure event as soon as reasonably possible but, in any case, no later than thirty days after the occurrence of the event. In such event, the time for performance of the task will be extended for a reasonable period of time following the force majeure event.

By way of example and not limitation, force majeure events include

     a.     Acts of God, war, insurrection, or civil disturbance;

     b.     Earthquakes, landslides, fire, floods;

     c.     Actions or inactions of third parties over which Buse has no control;

     d.     Unusually adverse weather conditions;

     e.     Restraint by court order or order of public authority;

     f.     Strikes;

     g.     Any permit or other approval sought by Buse from a government authority to implement any of the actions required by this consent decree where such approval is not granted or is delayed, and where Buse has timely and in good faith sought the permit or approval; and

     h.     Litigation, arbitration, or mediation that causes delay.

11. This Court retains jurisdiction over this matter. And, while this Decree remains in force, this case may be reopened without filing fee so that the parties may apply to the Court for any further order that may be necessary to enforce compliance with this decree or to resolve any dispute regarding the terms or conditions of this Decree. In the event of a dispute regarding implementation of, or compliance with, this Decree, the parties must first attempt to resolve the dispute by meeting to

CONSENT DECREE - 8
CASE No. 2:15-cv-01460-MJP

discuss the dispute and any suggested measures for resolving the dispute as provided in section 17 of this Decree. The provisions of section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), regarding awards of costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, will apply to any proceedings seeking to enforce the terms and conditions of this Consent Decree.

12.     The parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), no consent judgment can be entered in a Clean Water Act suit in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the U.S. Attorney General and the Administrator of the U.S. Environmental Protection Agency (EPA). Therefore, upon the filing of this Consent Decree by the parties, Puget Soundkeeper Alliance will serve copies of it upon the Administrator of the EPA and the Attorney General, with copy to Buse.

13.     This Consent Decree will take effect upon entry by this Court. It terminates three (3) years after that date, or 90 days after the parties' completion of all obligations imposed by this Decree, whichever is later.

14.     Both parties have participated in drafting this decree.

15.     This Consent Decree may be modified only upon the approval of the Court.

16.     If for any reason the court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the discretion of either party. The parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the court to entry of this Consent Decree.

17.     Notifications required by this Consent Decree must be in writing. The sending party may use any of the following methods of delivery: (1) personal delivery; (2) registered or certified mail, in each case return receipt requested and postage prepaid; (3) a nationally recognized overnight

CONSENT DECREE - 9
CASE No. 2:15-cv-01460-MJP

courier, with all fees prepaid; or (4) e-mail.  For a notice or other communication regarding this

decree to be valid, it must be delivered to the receiving party at the one or more addresses listed

below or to any other address designated by the receiving party in a notice in accordance with this

paragraph 17.

> **if to Puget Soundkeeper Alliance:**
> Katelyn Kinn
>
> **and to:**
> Richard Smith
> Smith & Lowney PLLC
> 2317 East John St.
> Seattle, WA   98112
> email: rasmithwa@igc.org
>
> **if to Buse:**
> Tom Parks
>
> **and to:**
> Mike Gossler
> Montgomery Purdue Blankinship & Austin PLLC
> 701 Fifth Avenue, Suite 5500
> Seattle, Washington 98104

A notice or other communication regarding this Consent Decree will be effective when

received unless the notice or other communication is received after 5:00 p.m. on a business day, or

on a day that is not a business day, then the notice will be deemed received at 9:00 a.m. on the next

business day.  A notice or other communication will be deemed to have been received: (a) if it is

delivered in person or sent by registered or certified mail or by nationally recognized overnight

courier, upon receipt as indicated by the date on the signed receipt; or (b) if the receiving party

rejects or otherwise refuses to accept it, or if it cannot be delivered because of a change in address

for which no notice was given, then upon that rejection, refusal, or inability to deliver; or (c) for

notice provided via e-mail, upon receipt of a response by the party providing notice or other

communication regarding this Consent Decree.

CONSENT DECREE - 10
CASE No. 2:15-cv-01460-MJP

DATED this 6th day of ___July___, 2016.


_____
Marsha J. Pechman
United States District Judge


Presented by:

MONTGOMERY PURDUE                    SMITH & LOWNEY, PLLC
BLANKINSHIP & AUSTIN PLLC

By _____     By _____
    Michael E. Gossler WSBA #11044          Richard A. Smith WSBA #21788
Attorneys for Defendant Buse Timber &        Meredith A. Crafton WSBA #46558
Sales, Inc.                          Attorneys for Plaintiff
                                     Puget Soundkeeper Alliance

CONSENT DECREE - 11
CASE No. 2:15-cv-01460-MJP